Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant Andrew Sun. Your Honor, this court has made clear that to convict a physician such as Dr. Sun for the act of prescribing opioids and other addictive narcotics, something doctors do every day, he must have had the intent to act as a quote-unquote pusher and not as a medical professional. In fact, this court has said a practitioner becomes a criminal not when he is a bad or negligent physician but only when he ceases to be a physician at all. Dr. Sun's drug conviction should be reversed and a new trial should be ordered for multiple reasons that we've detailed in our brief. What I'd like to do this morning is focus on primarily the jury instructions that we've raised, most notably the good faith defense instruction that was requested. In addition, depending on time, I'd like to address the fact that Dr. Sun is entitled to reversal of the concealment money laundering convictions because the mere act of depositing cash into one's own personal bank account was not concealment. But first, with respect to the jury instructions, here the instructions incorrectly permitted the requisite state of mind because the jury was not instructed regarding the good faith defense that Dr. Sun had requested. Now a defendant is entitled to a defense instruction, a theory of defense instruction, provided that it is supported by the law and has some foundation in the evidence. Both of that was present here. The law is clear. Good faith is something that has been in multiple cases. And as far as the evidence is concerned, there was certainly sufficient evidence that he, in fact, was acting as a doctor and not as a pusher when he met with these various undercover officers. Well, those arguments were made and argued to the jury and they rejected that. So I think at this point, your challenge is to focus on the instructions that were given to the jury and explain to us in what ways were those instructions inadequate. Well, they were inadequate because they did not cover the good faith defense that Dr. Sun was entitled to. What the government has argued is that, well, the instructions that were given adequately covered good faith. And they referenced the fact that they took language from Feingold, which is certainly in Feingold that distribution of drugs was outside the usual course of professional practice and that defendant acted with intent to distribute them outside the course of professional practice. Why do you have to talk so fast? I apologize, Your Honor. Oh, that's all right. He has a lot to say, Judge Pegerson. I've been told I speak too fast. So the government points out language that is inadequate. The problem is, while that was challenged in Feingold, this Court said, well, it's okay because a good faith instruction was given. And therefore, those instructions were okay because it was in combination with the good faith instructions that were in fact given. But they were not given here. The jury was not given the fact of defense, that if a doctor acts in good faith to provide medical assistance to a patient, even if that includes prescribing addictive opioids, that that's okay. But the jury was never told that. And that's the problem that we have here. And the fact is, in case after case after case in which arguments have been made that the instructions were insufficient, this Court has said, well, no, it was okay because there was a good faith instruction. The Supreme Court in Moore said, no, the instructions were given were okay because there was a good faith instruction. The government now argues also here that, all right, well, there was an instruction that was objected to with respect to narcotics withdrawal. And that narcotic withdrawal is solely for the treatment of addiction, would not be in good faith. Now they said that was okay because that comes from Hays. Well, of course, also in Hays, there was an accompanying good faith instruction, which is what that language was actually referencing. But again, we did not have a good faith instruction here. So, you know, it's our position that there was certainly a basis for the good faith instruction, and it was error not to give it. And this Court has said, failure to give a defense instruction that has basis in the evidence and law is reversible error per se. Harmless error does not apply to that situation. Now, when one looks at the evidence, there was certainly plenty of evidence that supports it that I'll now focus on a because if you look at the recordings of the various undercovers who met with Dr. Sun, you'll see Dr. Sun tried to dissuade the patients from obtaining the drugs that they wanted. Dr. Sun only asked for payment for the actual doctor visits, not for any prescriptions that were given out. He gave specific instructions on drug usage. He tried to limit the number of pills that were given. All of this were part of what would be a good faith defense and demonstrate that he in fact was not acting as a pusher, but in fact was acting as a medical professional. Do you want to talk about the money laundering? I did, Your Honor. With respect to money laundering, the key point here is whether or not Dr. Sun was concealing the funds. He deposited the funds that he received into his personal bank account. That was in his actual name, set up with his actual Social Security number at his address. There was no concealment of any of that money. It was easily discoverable. In fact, the IRS agent testified, yes, we didn't have any difficulty finding this money. It was in his personal bank account. And so it's frankly a pretty simple argument in this court. Multiple courts have said, look, if the money is deposited into an account that is openly known, easily discoverable, in one's name, that's not concealment. That's the exact opposite of concealment. But in this case, you're not arguing that the instructions on money laundering were improper, are you? We're arguing that there was legally sufficient evidence. Right, so you're making a Jackson argument. Correct. For us to find that in this case, we'd have to find there was actually Jackson error for you to prevail. Is that correct? Yes. Okay. Which we believe that there was here. Now, the government does rightly point out there was no Rule 29 that was made, so the error is here, is plain error review. But again, if the government failed to prove an essential element of the crime, that being that the money was in fact intended to conceal the source, well then, plain error would in fact be met here. And with that, I'll actually reserve the balance of my time. All right, thank you. Let's hear from the government. Benjamin Barron for the United States. Good morning. There's a short answer why defendant's good-faith argument is wrong, and there's a long answer. I'll start with the short answer. The short answer is that Feingold explicitly defined the elements of the offense. That's at page 1008. It said, simply put, to convict a practitioner under 841A, and then it went on to list elements 1, 2, and 3, that being the distribution, acting outside the course of practice, and intending to do so. The district court's instructions track virtually verbatim the elements as recited by this court in Feingold. It is well established that where there is a specific intent element, a good-faith instruction isn't required, because specific intent is the good-faith defense, essentially. Negating specific intent is the effort of presenting good faith, and it's well established throughout this court's precedent. Therefore, no abuse of It's as simple as that. The long answer... Let me have you stop at the short answer. Yes, Your Honor. If my colleagues have any questions on the good-faith instruction, then that's fine. We can explore it further, but I'd like you to pivot to the money laundering conviction, because I think that's a tougher case for the government, even on plain error review. What evidence shows concealment of the source location and nature of the funds versus an effort to just conceal the underlying criminal activity? Yes, Your Honor. Let me just summarize the facts, and then I'll present the arguments about them. So the facts, and again, all this is construed in the government's favor, is that the defendant, beginning in 2009, 2008-2009, began dramatically escalating his controlled drug prescriptions. Between 2009-2010, there was a seven-fold increase. The timing of that is important, because the defendant was on probation. He waited a certain amount of time, you know, until he was clear, and then began prescribing again. But in any event, that massive spike occurred. At the same time that that massive spike occurred, there was a proportionate massive spike in his cash deposits. Over the course of the charged offense, there was a 1.1 million dollar total amount of cash deposited into his accounts over a three-year period. And in 2010 is really when that spike escalated, exactly when the drugs spiked. And that same year, when that escalation happened, the defendant split virtually 50-50 the $300,000 in cash between the two accounts. Half going into his personal account, half going to his business account. The following year, 2011, as that spike in his controlled drug prescriptions escalated, all of a sudden the cash stopped going into his business account altogether, and went only into his personal account. The defendant's deposits into those accounts were being commingled with various funds, checks, other, you know, proceeds that he was putting into the accounts. And when the defendant was interviewed, he admitted that he was, in fact, running a cash business, and that he was, in fact, trying to conceal the funds. Now he said that he was trying to conceal it from the IRS, but that really is neither here nor there, because A, concealment is concealment, but B, the jury wasn't required to accept that anyway. And again, the evidence is construed in the by defendant to law enforcement and regulators to protect himself. But explain to me again what the significance is of the fact that there was a spike in prescriptions issued, and a corresponding spike in the defendant taking cash and putting it into his personal account. Now, the commingling of funds, there might be something there with regard to, you know, serving as evidentiary support for concealment money laundering. But as I read the government's opening statement, closing arguments, the government's argument was really that he was essentially moving the money into his personal account to prevent an audit, which would then lead to the discovery of the crime. So really, the argument conflated the attempts to conceal the criminal activity from concealment of the nature and source of the funds. It's the way the government argued it, it's one and the same. I disagree, Your Honor. But I will point out the issue isn't what the government argued, but what the evidence supported. The jury doesn't have to, the jury can make findings based on whatever it wants. It doesn't have to accept the arguments. But in any event. Sure, but it's helpful, it's helpful to read the closing argument because this is what the government's theory was in terms of how the evidence tied together to show concealment of the nature and source of the funds themselves. I agree, Your Honor. So, so let me frame the legal issue. The legal issue is, was there a design to conceal, and was that designed to conceal a listed attribute, which in this case would be the nature and the source of the funds, right? And so what the defendant was doing, it's common sense, a doctor shouldn't make 1.1 million dollars in cash. And the defendant didn't want that cash associated with him, with his business. So where that 2010 distribution of the cash funds comes into play is that there was a design. This was methodical. And that's corroborated by the following year, 2011, when the defendant put all the funds in his personal account. All of a sudden, not just that 50-50 split, but all of it's going in the personal account, all relevant to show a design. And that design was confirmed when the defendant made a confession, admitting that he specifically did that with the intent to conceal the funds. That supports the jury finding. It's as simple as that. The government's argument was that the defendant knew a doctor shouldn't make this much cash. The defendant knew that he was on probation. The defendant knew that this is the type of offense that's being investigated. And what would happen if someone looked in his business account and see all this cash there? What would happen if the medical board, which was supervising him, found out that this doctor who's been already accused of the same type of misconduct was making this much cash, right? He well knew what the significance of a doctor making this much cash, and so he was trying to hide it by putting it in his personal... Is the intent to hide money the same as the intent to hide the nature and source of the funds? Yes. What he was trying to do was didn't want that money associated with his business account. He wanted it to be somewhere else. So if someone looked into his business accounts, they wouldn't see all that money there. And again, I have to emphasize, the defendant admitted that he was trying to hide the money, right? That alone supports the jury finding. But what also supports the jury finding, even if you put that statement aside, is the methodical nature that he was handling his funds, the fact that he was putting it in his personal, not his business account. And look at the Eighth Circuit decision in... Let me find the name of the case. I believe it was Sutaro? Sutera. Sutera. In Sutera, the defendant was putting the money from one... From his gambling business illegally into his restaurant, right? And what the Eighth Circuit held is, yeah, that account is associated with him. It might not have been a very good way to hide the funds, but still, he was taking one source of proceeds and putting them in another account and making them look like they were proceeds from this other separate business, right? And by analogy, what the defendant was trying to do was distance himself from these funds, put them in his personal account, and if someone were to ask him, what is this money? He could provide whatever explanation he wants, right? The point is, he's distancing his business from these funds. Again, I just need to emphasize again, the standard is, they are designed to conceal and the defendant admitted it. And that really ends the issue. Under your argument, does that mean that every single defendant who runs an illegal business but funnels the money out of the business instead of putting it in the business would be guilty of concealment money laundering? If the defendant funneled money in a way that he intended to conceal the funds, then yes, right? If the defendant's specific intent was to that he's concealing a listed attribute. Here, the defendant did not want that money associated with his business. You could see it in the way he handled his funds. Why was he trying to keep the funds out of his business account? Why? Right? The jury was entitled, just based on that alone, to reach a finding that he was trying to get it away from his business account so it wouldn't be associated with him, right? Why did the defendant admit that he was concealing it? Because he was. So, I mean, look, it's plain error, first of all, is the standard that applies. Now, I'm familiar with that. I'm curious, what's the practical effect of these counts in this case? In terms of, I mean, let's assume, and I'm not saying this, but I believe, I'm just trying to think long-term here. Let's say we agree with you on all of the narcotics and drug charges, but disagree with you on money laundering. From a sentencing perspective, and the district court can do whatever would want to do on resentencing, but just at sentencing in this case, what are the money laundering counts at? I didn't prepare to address that argument, obviously, in terms of sentencing, but there isn't. So, basically, 1956 applies the offense level for the underlying offense, and then applies a two-level enhancement for the 1956 violation itself, and then if I recall correctly, and again, I haven't prepared this, so I'm sorry if I'm wrong, I believe there's an additional six-level enhancement that applies if the purpose of the funds was to conceal drug trafficking. So, if I apply, but ultimately, that's neither here nor there because there was sufficient evidence. Right. Well, how old is the defendant now? 80 years old, your Honor. Okay. An 80-year-old defendant prescribing narcotics can kill people just as easily as a 20-year-old. No, I'm not, I'm not debating, I mean, the argument, you can say he was old enough to know what he was doing was wrong. I mean, that's another, another kind of canned response you can give, but I'm just trying to see what the practical, I'm trying to understand what the practical effect of these counts are, because I agree, this is a, I understand your argument. I think these, for me, this is the most difficult issue in the case, honestly, are these counts, and so I'm just trying to see long-term. I just, I just, I mean, I know I've said this already, but the defendant's statement answers that issue alone. I mean, that, that's really it. You have to have a design to conceal, and the defendant admitted that he had a design to conceal, but then when you just look at the pattern. But on this record, I think plain error is tough for the, for the defendant, but where a defendant says, well, I don't want the government to figure out what I was doing, trying to hide the illegal criminal scheme, that's different than trying to conceal the nature of the source of the proceeds to me. There is a distinction there. There has to be. Otherwise, you're conflating hiding the underlying criminal activity exactly with hiding the proceeds of the scheme. He didn't want those proceeds to be associated with his medical business, because he didn't want that money to be associated with the drug proceeds that he was earning. Therefore, he's hiding the source and the nature of the funds. It's as simple as that. And again, you know, the issue, look, it sounds as though if the, if these, if your honors were on the jury, you might have reached a different conclusion, but that's not the standard that applies. The standard is weighing the evidence as favorably for the government as possible. Could a reasonable juror have reached this conclusion, and moreover, would a jury have plainly erred in doing so? And the answer is no. The answer is when you look at the pattern of deposits, look, the commingling of funds alone, commingling of funds is well recognized to be evidence of money laundering. You could just look at that. Was there evidence presented as to commingling of funds? Yes. Yes, your honor. The agent testified to that, and the bank records that were presented for the specific transactions included the deposit slips and other records showing the commingling of the cash deposit with the other funds that were also deposited into the accounts. That wasn't evidence, your honor. Does the court wish to hear anything else on the jury instructions? Because I can need to. Okay. Judge Owen, Judge Peterson? Okay. Well, I guess unless the court has other questions. The only thing I know it is, you know, look, I very strongly believe that sufficient evidence supported the jury findings, but if the court does reverse, obviously there'll have to be a resentencing, but it wouldn't impact the drug counts because all the money evidence would still be admissible, relevant evidence of the drug trafficking. I'm not even sure if resentencing matters. I'm just looking at the pre-sentence report right now. That's why I asked the question. I think the sentencing here was tied to the amount of drugs sold, not to, I don't, I didn't see any enhancements for. That may be true, you know, that's true. I shouldn't concede that point because I'm not sure with the law. I don't want to say much to do about nothing, but I think that may be where we are in this one on these counts. I'm not sure they really matter, but anyway, I think we hear where you're coming from. And the only last thing I'd say on this, and then I'll be done, is that in my brief, I cited cases that have found that a defendant putting money in accounts in their own name can still be money laundering, right? That factor alone does not negate a jury's verdict. And we've looked at those cases. I know, Your Honor. Thank you. So I submit on that, Your Honor, unless there are further questions. Thank you very much. Mr. Libby, maybe you can briefly touch on my question. I'm not saying convictions of convictions don't matter, but practically speaking, why do these counts matter? Because convictions do matter. Okay, we got that, so get me past that. So these counts, in fact, have the longest stat maxes of all of the counts. But we're not close to that. True, but of course it could have been a part of the court's thinking in terms of what the ultimate sentence would be, right? But for base offense level and total offense level, does it matter? I don't believe the sentencing guidelines would change. Okay, that was my question. Yeah, I don't believe the guidelines would change, but it certainly could have an impact in the ultimate sentence. And he can get his $100 special assessment back. I mean, clearly it's not a moot question. It would be $300 in special assessments, but yes, he would get that back as well. And if I could just address, respond to some of what opposing counsel just said. First, there's nothing wrong with an all-cash business. The government seems to have made a big deal about that. There are plenty of medical practices that are all-cash businesses. There's nothing wrong with that. Sure, but we're on plain error review, and counsel in this argument referenced the fact that there was evidence below as the commingling of funds, which then takes it a little bit beyond the situation where you're merely just taking cash out of a cash business and putting it into a personal account. What was presented and argued regarding commingling of funds? With respect to commingling of funds, again, it would not be unusual for someone to be commingling funds in a personal bank account. I mean, you commingle funds from all sorts of sources into a personal bank account. That's not, frankly, relevant to the issue of whether it conceals the source of those funds. That's what's relevant. And in fact, what case law has talked about is, when it comes to commingling, is when you commingle funds in business accounts, when you put them in accounts with various, you know, DBA accounts that are not in the defendant's name. That's where you can, in fact, hide money. The Soutera case that counsel pointed out from the Eighth Circuit, that was where the deposits went into a business account, not a personal account. And that's where you can have concealment, is when you put it in a business account. Here, in Wilkes, what this court has said, you know, where a defendant takes no steps to design or conceal the source of the funds, leaving an easy-to-follow trail in moving money around, those money laundering. And that's the situation we have here. It was easily traceable funds, as the IRS agent testified to. And that, frankly, should end the analysis. All right, anything further? Unless you'd like me to address the jury instructions again, I'll submit to you. I don't have any additional questions. Judge Owen? Judge Ferguson? All right, thank you very much for your arguments. Matter is submitted.
judges: Pregerson, Nguyen, Owens